UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMEPHIS PEREZ,

                              Plaintiff,

        -v-

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                              Defendant.

19 Civ. 3154 (PGG) (JLC)


**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS MOTION TO STRIKE, AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677
E-mail: samuel.dolinger@usdoj.gov

SAMUEL DOLINGER
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .......................................................................................................................3

I.    THE COURT SHOULD STRIKE PEREZ'S MOTION PAPERS, WHICH VIOLATE THE COURT'S INDIVIDUAL PRACTICES AND PRIOR ORDERS ..........3

II.    PEREZ WAIVED HIS CHALLENGE TO THE MAJORITY OF ICE'S WITHHOLDINGS AND THE ADEQUACY OF ICE'S SEARCH FOR RECORDS ...................................................................................................................5

III.   ICE'S WITHHOLDINGS PURSUANT TO FOIA PRIVACY EXEMPTIONS 6 AND 7(C) WERE PROPER, AND PEREZ'S ARGUMENTS TO THE CONTRARY ARE WITHOUT MERIT ............................................................8

    A.    The Withheld Records and Information Constitute Personnel or Similar Files Under Exemption 6 .........................................................................8

    B.    The Withheld Records and Information Were Compiled for Law Enforcement Purposes Under Exemption 7(C)......................................11

    C.    The Privacy Balancing Supports ICE's Withholdings Under Both Exemptions 6 and 7(C) ...........................................................................13

        1.    Subjects, Witnesses, and Investigators in Internal Investigations Have Substantial Privacy Interests............................................13

        2.    There Is No Material Public Interest in Release of Material Withheld Under Exemptions 6 and 7(C), and Balancing Supports Withholding ..............................................................................14

    D.    Perez Concedes That ICE Complied with FOIA's Segregability Requirement........................................................................................18

IV.   PEREZ'S EXEMPTION 5 CHALLENGE FAILS...........................................18

V.    ICE'S SEARCHES WERE REASONABLE AND ADEQUATE...................22

VI.   ICE'S RESPONSIVENESS DETERMINATIONS SHOULD BE UPHELD .................24

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*ACLU v. NSA*,
   925 F.3d 576 (2d Cir. 2019)............................................................................. 19, 21

*ACLU v. U.S. Dep't of Def.*,
   628 F.3d 612 (D.C. Cir. 2011) ....................................................................... 11, 24

*Adamowicz v. IRS*,
   672 F. Supp. 2d 454 (S.D.N.Y. 2009)................................................................... 6

*Adamowicz v. IRS*,
   402 F. App'x 648 (2d Cir. 2010) ............................................................. 6, 23, 25

*Am. Ctr. for Law & Justice v. DOJ*,
   325 F. Supp. 3d 162 (D.D.C. 2018) ..................................................................... 5

*Am. Oversight v. DOJ*,
   401 F. Supp. 3d 16 (D.D.C. 2019) ..................................................................... 11

*Amnesty Int'l USA v. CIA*,
   No. 07 Civ. 5435 (LAP), 2008 WL 2519908 (S.D.N.Y. June 19, 2008).................... 7

*Assoc. Press v. DOJ*,
   549 F.3d 62 (2d Cir. 2008)................................................................................. 14

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ....................................................................... 19, 22

*Conti v. DHS*,
   No. 12 Civ. 5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) .................... 6, 7, 13, 14

*Cook v. NARA*,
   758 F.3d 168 (2d Cir. 2014)................................................................................. 9

*Cotton v. Adams*,
   798 F. Supp. 22 (D.D.C. 1992) ..................................................................... 13, 14

*Dep't of State v. Ray*,
   502 U.S. 164 (1991)........................................................................................... 17

*Dep't of State v. Washington Post Co.*,
   456 U.S. 595 (1982)....................................................................................... 9, 10

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001)............................................................................................... 19

*Ferrigno v. DHS*,
    No. 09 Civ. 5878 (RJS), 2011 WL 1345168 (S.D.N.Y. Mar. 29, 2011) ........................... *passim*

*Garcia v. DOJ*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) ............................................................................. 15, 23

*Germosen v. Cox*,
    No. 98 Civ. 1294 (BSJ), 1999 WL 1021559 (S.D.N.Y. Nov. 9, 1999) .................................. 13

*Gilman v. DHS*,
    32 F. Supp. 3d 1 (D.D.C. 2014) ............................................................................................ 6

*Goland v. CIA*,
    607 F.2d 339 (D.C. Cir. 1978) .............................................................................................. 7

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) ......................................................................................... *passim*

*Hopkins v. HUD*,
    929 F.2d 81 (2d Cir. 1991) ................................................................................................ 15, 19

*Horvath v. U.S. Secret Serv.*,
    419 F. Supp. 3d 40 (D.D.C. 2019) ................................................................................... 13, 14

*House v. Wackenhut Servs.*,
    No. 10 Civ. 9476 (CM) (FM), 2012 WL 4017334 (S.D.N.Y. Aug. 20, 2012) ........................ 4

*Jackson v. Fed. Exp.*,
    766 F.3d 189 (2d Cir. 2014) ................................................................................................ 18

*Kearns v. FAA*,
    312 F. Supp. 3d 97 (D.D.C. 2018) ...................................................................................... 13

*Keys v. DOJ*,
    830 F.2d 337 (D.C. Cir. 1987) ............................................................................................ 12

*Kleinert v. Bureau of Land Mgmt.*,
    132 F. Supp. 3d 79 (D.D.C. 2015) ...................................................................................... 12

*Long v. OPM*,
    692 F.3d 185 (2d Cir. 2012) ................................................................................................ 17

*Lue v. JPMorgan Chase & Co.*,
    768 F. App'x 7 (2d Cir. 2019) .......................................................................................... 4, 5

*Massey v. FBI*,
    3 F.3d 620 (2d Cir. 1993) ................................................................................................... 16

*Meeropol v. Meese*,
    790 F.2d 942 (D.C. Cir. 1986) ............................................................... 7, 11, 24

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ................................................................... 7, 24

*Milner v. Dep't of Navy*,
    562 U.S. 562 (2011) .......................................................................................... 16

*Mittleman v. OPM*,
    76 F.3d 1240 (D.C. Cir. 1996) ...................................................................... 12

*Morris v. Wheeler*,
    No. 11 Civ. 701, 2018 WL 6308785 (D.D.C. Dec. 3, 2018) ..................... 8

*NARA v. Favish*,
    541 U.S. 157 (2004) .......................................................................................... 15

*N.Y. Times Co. v. DOJ*,
    756 F.3d 100 (2d Cir. 2014) ...................................................................... 23, 24

*N.Y. Times Co. v. DOJ*,
    939 F.3d 479 (2d Cir. 2019) ............................................................... 19, 21, 22

*Perlman v. DOJ*,
    312 F.3d 100 (2d Cir. 2002) ................................................................ *passim*

*Phillips v. ICE*,
    385 F. Supp. 2d 296 (S.D.N.Y. 2005) ........................................................ 10

*Providence Journal Co. v. Dep't of Army*,
    981 F.2d 552 (1st Cir. 1992) ......................................................................... 20

*Pub. Citizen v. Dep't of State*,
    276 F.3d 634 (D.C. Cir. 2002) ........................................................................ 7

*S.G. v. Success Acad. Charter Sch., Inc.*,
    No. 18 Civ. 2484 (KPF), 2019 WL 1284280 (S.D.N.Y. Mar. 20, 2019) ................................. 4

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) .................................................................... 24

*Stern v. FBI*,
    737 F.2d 84 (D.C. Cir. 1984) ................................................................. 11, 17

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) .................................................................... 18

*Tracy v. Freshwater,*
   623 F.3d 90 (2d Cir. 2010)............................................................................ 3

*Wood v. FBI,*
   432 F.3d 78 (2d Cir. 2005)................................................................... *passim*

## STATUTES

5 U.S.C. § 552........................................................................................... *passim*

6 U.S.C. § 253.................................................................................................. 11

ICE,[1] by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in support of its motion for summary judgment and its motion to strike Perez's summary judgment papers for violating the Court's Individual Practices and orders, and in opposition to Perez's cross-motion.

## PRELIMINARY STATEMENT

Plaintiff Kamephis Perez, an attorney formerly employed by ICE, improperly attempts to use this FOIA litigation to pursue his employment-related grievances against his former supervisor and against ICE. First, Perez's summary judgment submissions violate both the page limitations of Your Honor's individual practices and the parties' prior briefing agreement, resulting in Plaintiff's filing more than twice the number of pages than permitted. As a result, the Court should strike these submissions or, at least, strike the nonconforming portions.

Second, Perez now attempts to litigate issues that he previously forfeited. Before summary judgment practice, Perez agreed to limit the scope of the litigation by waiving his challenges to the adequacy of ICE's search for records and all invocations of FOIA exemptions other than those relating to six pages of records withheld in full. Now, after the government filed an opening brief in reliance on Perez's waiver, he seeks to undo that waiver and broaden the scope to incorporate all issues. The Court should reject this tactic, as Perez makes no valid excuse that could undo his prior agreement. Accordingly, any challenge outside the scope of the parties' agreement should be deemed waived.

Third, on the merits, Perez's internal personnel complaint was investigated by the agency and was ultimately determined to be unfounded. Perez's attempt to use this FOIA litigation as an auxiliary process for his employment grievances is inappropriate and should be rejected.

---

[1] Capitalized terms in this memorandum have the same meaning assigned to them as in the government's opening brief, Dkt. No. 27 ("Gov't Br."), unless otherwise noted.

Because ICE appropriately released records responsive to Perez's FOIA request seeking records concerning his personnel complaint, with redactions under FOIA exemptions 5, 6, and 7(C), 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), summary judgment should be granted in ICE's favor.

Even if Perez had not waived his arguments as to most of the documents here, his challenges to ICE's withholdings are without merit. As to exemption 6, Perez contests whether the information at issue meets the threshold requirement of "personnel" or similar files, but this exemption has been broadly construed to cover all information identifiable to individuals, specifically including administrative investigative files. Here, ICE redacted names and other potentially personally identifying information from a set of personnel and other records related to Perez's own internal personnel complaint, which plainly meet this standard. Perez's challenge to the exemption 7(C) threshold is also unavailing. While he claims that the relevant records were not compiled for law enforcement purposes, this exemption covers records compiled as part of civil and administrative enforcement, not just in criminal investigations, and in his own complaints of purported misconduct, Perez expressly stated that he was alleging violations of the law, not just agency policies or practices.

FOIA's privacy balancing tests favor withholding under both exemptions 6 and 7(C). The withheld information relates to Perez's internal personnel grievances and thus clearly implicates important privacy interests of ICE personnel and third parties, because its release could implicate them as witnesses, investigators, or subjects involved in an internal investigation. This could lead to embarrassment and harassment, and could hinder employees' participation in internal investigations. Moreover, there is no cognizable public interest in the withheld personally identifying information, which tells the public little or nothing about agency activities.

Fourth, as to FOIA exemption 5—as to which Perez previously waived any challenge—

ICE redacted a limited set of deliberative opinions and recommendations from its internal records relating to Perez's personnel complaint. These records are both predecisional and deliberative, and their release would cause the type of harm that the privilege is meant to prevent. ICE also redacted a limited amount of attorney work product from two e-mails. If the Court reaches the merits, these exemptions should be upheld as well.

Fifth, while Perez expressly waived any dispute over the adequacy of search, he now purports to raise it. However, as addressed in ICE's declaration, the agency properly tasked search requests to the three offices of ICE likely to hold responsive records. Each conducted an appropriate search and forwarded records for review. Because these searches were reasonably calculated to uncover responsive records, the Court should grant judgment to ICE.

Finally, Perez challenges ICE's responsiveness determinations. Perez concedes that ICE need not produce nonresponsive records, but concludes—based on unsupported speculation and his own flawed review of the records produced—that ICE should have provided additional records. However, as set forth below, ICE's responsiveness determinations were proper.

For the reasons set out herein and in the government's opening brief, the Court should grant ICE's motion for summary judgment and to strike, and deny Perez's cross-motion.

## ARGUMENT

## I. THE COURT SHOULD STRIKE PEREZ'S MOTION PAPERS, WHICH VIOLATE THE COURT'S INDIVIDUAL PRACTICES AND PRIOR ORDERS

As a preliminary matter, the Court should strike from the docket Perez's motion papers, which violate both Your Honor's Individual Practices and the prior orders of the Court. While Perez is proceeding *pro se* in this action, he is an attorney—and thus his failure to comply with court rules is especially unwarranted. While *pro se* parties typically receive special solicitude from courts, "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy*

*v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).  Accordingly, Perez's *pro se* status cannot excuse his disregard for Court rules and orders.

First, Your Honor's rules provide that "[u]nless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 double-spaced pages."  Individual Rules of Practice of Judge Paul G. Gardephe in Civil Cases, Rule IV.B.  Despite this clear mandate, Perez's brief in support of his summary judgment motion runs to 33 pages—8 pages over the 25-page limit.  *See* Dkt. No. 31.

Second, Perez submitted two *separate* briefs—one in support of his summary judgment motion and one in opposition to the government's summary judgment motion.  *See* Dkt. Nos. 31-32.  But the schedule proposed by the government—to which Perez consented, and which was so-ordered by Magistrate Judge Cott—expressly called for Perez to file a "*combined*" brief in opposition to the government's motion and in support of his own motion.  Dkt. No. 25, at 2 (emphasis added).  Thus, despite the fact that Perez was entitled only to a single brief of 25 pages, he filed two briefs totaling 57 pages—32 pages more than he was entitled, an overrun of more than double his allotment.

Courts can, within their discretion, strike briefs that do not comply with reasonable page limitations.  *See Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 9 (2d Cir. 2019) (summary order) (affirming district court's decision to strike *pro se* party's noncompliant brief), *cert. denied*, 140 S. Ct. 388 (2019); *House v. Wackenhut Servs.*, No. 10 Civ. 9476 (CM) (FM), 2012 WL 4017334, at *2 (S.D.N.Y. Aug. 20, 2012) (a district court is "within [its] rights to strike plaintiff's memoranda for failure to comply with [the court's] guidelines").  Thus, the Court should strike at least the noncompliant portion of the briefing—*i.e.*, the 32 surplus pages that exceed the 25-page limit that Perez disregarded—and decline to consider it.  *See, e.g., S.G. v.*

*Success Acad. Charter Sch., Inc.*, No. 18 Civ. 2484 (KPF), 2019 WL 1284280, at *6 n.3 (S.D.N.Y. Mar. 20, 2019) (striking excess pages from brief and declining to consider them). Alternatively, the Court should strike Perez's briefs altogether and direct him to refile briefing that complies with the Court's page limitation rules and prior orders. If he fails to do so, the Court should treat the government's motion as unopposed. *See Lue*, 768 F. App'x at 9 (affirming district court's decision to "deem[] defendants' summary judgment motion unopposed, given [the plaintiff's] repeated failure to submit a compliant opposition").

## II. PEREZ WAIVED HIS CHALLENGE TO THE MAJORITY OF ICE'S WITHHOLDINGS AND THE ADEQUACY OF ICE'S SEARCH FOR RECORDS

By voluntary agreement, Perez waived his challenge to the adequacy of ICE's search and the application of exemptions other than to six pages ICE withheld in full. He now improperly seeks to undo the parties' prior agreement limiting the scope of this litigation, in the midst of summary judgment briefing. Because there is no valid basis for him to do so, the Court should enforce Perez's waiver and decline to review any issues outside the agreed scope of litigation.

Before summary judgment briefing, the parties reasonably agreed to limit the litigation to specified issues—the full withholdings of 6 pages of records, and ICE's determination that certain documents located in its searches were not responsive to Perez's request. *See* Dkt. Nos. 24-25. The parties' agreement was memorialized in a letter from the government dated January 10, 2020, which was so-ordered by Judge Cott. *Id.* The letter—to which Perez concedes he consented—expressly stated that "[t]he remaining withholdings, and the adequacy of ICE's search for records, are not in dispute." *Id.*; *see* Dkt. No. 31-10 ("Perez Decl.") ¶¶ 33-34.

The Court should enforce Perez's voluntary waiver, which narrowed the scope of the issues at stake in the litigation, and decline to review any issues outside that agreed scope. *See Am. Ctr. for Law & Justice v. DOJ*, 325 F. Supp. 3d 162, 169 (D.D.C. 2018) (holding that by

"agreeing to limit the Court's involvement to deciding the parties' dispute about [the agency's] withholdings, [the FOIA requester] knowingly and voluntarily waived all other issues it might reasonably have anticipated, including any challenge to the adequacy of [the] search"); *see also Gilman v. DHS*, 32 F. Supp. 3d 1, 22-23 (D.D.C. 2014) (enforcing terms of narrowed FOIA request set out in parties' joint status report).

Perez's argument for seeking to revoke his prior agreement is specious and should be rejected. He asserts that because ICE corrected the basis for its determination to withhold six pages—notably, the same six pages that were already in dispute—he is now entitled to challenge ICE's redactions on *all* of the remaining pages released in part, which Perez already had in his possession, and as to which ICE made no subsequent re-determination. Perez's position is absurd: the six pages as to which ICE made a correction were the same six pages that the parties already agreed were in dispute. Perez had a full opportunity to review the remaining pages that were released in part in November 2019, and he voluntarily declined the opportunity to challenge the withholdings. Perez raises no valid basis for his improper attempt to undo his waiver.

Perez vaguely states that ICE's "handling of this matter" shows "apparent bad faith." Dkt. No. 32 ("Pl. Opp.") at 2. But this allegation is unsupported by the record or the case law. Perez "essentially asks the Court to presume bad faith" on the part of ICE, but this is "the opposite of what the law instructs." *Conti v. DHS*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *14 (S.D.N.Y. Mar. 24, 2014). Indeed, "[i]t is well established that the Government is entitled to a presumption of good faith" in its response to FOIA requests. *Adamowicz v. IRS*, 672 F. Supp. 2d 454, 464 (S.D.N.Y. 2009), *aff'd*, 402 F. App'x 648 (2d Cir. 2010) (summary order).

Perez's bald allegations of "apparent bad faith" appear to hinge on the fact that ICE disclosed certain records to him once this case was in litigation. Pl. Opp. at 2. But courts have

"declined to find subsequent disclosure as evidence of bad faith" in FOIA cases; to "effectively penalize an agency" for subsequent disclosures would perversely "creat[e] an incentive against disclosure." *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002) (quotation marks omitted); *accord Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986) ("[I]f the release of previously withheld materials were held to constitute evidence of present 'bad faith,' similar evidence would exist in every FOIA case involving additional releases of documents after the filing of the suit." (quotation marks omitted)); *see also Conti*, 2014 WL 1274517, at *15 ("many courts have rejected the argument that the discovery of additional documents or later discovery of missing files renders a search unreasonable or conducted in bad faith" (collecting cases)). Moreover, the D.C. Circuit has "emphatically reject[ed]" Perez's argument (*see* Pl. Opp. at 9) that an agency's determination that a prior decision was in error means that it "follows that the agency is fallible, and its affidavits, suspect." *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981). Indeed, this would "work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld." *Id.* Accordingly, the Court should reject Perez's unsupported claim of "apparent bad faith," which would disincentivize agencies from revisiting their decisions and producing additional records when appropriate, as ICE did here.[2]

To compound his improper attempt to reverse his position, Perez neglected to raise this issue in a timely way, before briefing commenced. ICE produced records to Perez by letter dated November 29, 2019. Fuentes Decl. ¶ 28. The parties memorialized their narrowing agreement

---

[2] Moreover, to the extent Perez claims "apparent bad faith" based on a purported delay in processing his request, courts have rejected this argument as well. *See Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) ("delay alone cannot be said to indicate an absence of good faith"); *Amnesty Int'l USA v. CIA*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *9 (S.D.N.Y. June 19, 2008) ("Nor is the Government's delay in responding to the Request evidence of bad faith.").

by letter dated January 10, 2020, which Judge Cott so-ordered on January 13. Dkt. Nos. 24, 25. Shortly thereafter, on January 21, ICE sent its re-determination letter to Perez. Fuentes Decl. ¶ 30. Perez did not raise any issue with respect to this re-determination during the month that passed before the government filed its opening brief on February 21. *See* Dkt. Nos. 26-28. Indeed, despite being on notice of the re-determination, Perez waited almost two months—until March 11, 2020—to raise any dispute as to these issues. Perez Decl. ¶ 36.

To permit Perez to undo his prior waiver agreement now and broaden his challenge would reward his dilatory conduct, while prejudicing the government, which had proceeded with the litigation in the agreed course and filed its brief addressing only the narrowed issues, as ordered, on February 21. *Cf. Morris v. Wheeler*, No. 11 Civ. 701, 2018 WL 6308785, at *6 (D.D.C. Dec. 3, 2018) ("To allow [the plaintiff] to reverse that position [concerning the relief sought] after the Government relied on her averments in preparing its case would be unfair and substantially prejudicial."). The Court should accordingly rule that Perez has waived any challenge other than within the limited scope set forth in the January 10 letter. Dkt. Nos. 24-25.

## III. ICE'S WITHHOLDINGS PURSUANT TO FOIA PRIVACY EXEMPTIONS 6 AND 7(C) WERE PROPER, AND PEREZ'S ARGUMENTS TO THE CONTRARY ARE WITHOUT MERIT

### A. The Withheld Records and Information Constitute Personnel or Similar Files Under Exemption 6

Perez incorrectly contends that the records at issue here do not meet the threshold requirement of exemption 6, which excludes from disclosure information from "personnel and medical files and similar files," the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). ICE properly determined that the records at issue qualify as "personnel" or "similar" records under Exemption 6 because they "relat[e] to allegations of work-related misconduct by an ICE employee," and "contain personally

identifying information which applies to particular individuals." *See* Second Declaration of Toni

Fuentes ("2d Fuentes Decl.") ¶¶ 21-25; Fuentes Decl. ¶¶ 37-38; *see* Gov't Br. at 7-8.

Perez ignores controlling case law, which—following the Supreme Court's holding in

*Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982)—have construed this threshold

requirement broadly. In *Washington Post*, the Supreme Court held that exemption 6 is not

"limit[ed] . . . to a narrow class of files containing only a discrete kind of personal information,"

and instead can be applied to any "information which applies to a particular individual . . . sought

from Government records." *Id.* at 602. The Second Circuit has construed this to include any

record that "contains personal information identifiable to a particular person." *Cook v. NARA*,

758 F.3d 168, 175 (2d Cir. 2014). Perez's argument that the information at issue does not

constitute a "personnel" or "similar" file is wrong: the responsive records contain personal

information and all, by definition, stem from Perez's own personnel complaint filed concerning

his former supervisor. *See* 2d Fuentes Decl. ¶¶ 23-25; Fuentes Decl. ¶¶ 4-6, 35-38.

Perez's position lacks support in law or fact. He cites only out-of-circuit district court

cases, some of which hold that, in certain circumstances, exemption 6 does not protect

"information that merely identifies the names of government officials who authored documents."

Pl. Opp. at 11 (quotation marks omitted). To begin with, it is not merely government officials'

names that have been redacted here. *See* 2d Fuentes Decl. ¶¶ 23-25; Fuentes Decl. ¶¶ 44-52.

Furthermore, Perez disregards binding precedent contrary to his position. He provides no ground

to distinguish the Second Circuit's holding in *Wood v. FBI*, which specifically addresses

"administrative investigative files"—like those at issue here—which "will likely contain

information about both the subject of the investigation and third parties such as witnesses." 432

F.3d 78, 86 (2d Cir. 2005). As *Wood* explains, even where such "files *may not contain personal*

*information about a particular witness beyond his or her name and identifying information such as a job title*, the disclosure of a witness's identity would be subject to the Exemption 6 balancing test." *Id.* (emphasis added).[3] Perez's argument to the contrary is meritless.[4]

Perez next incorrectly argues that the withheld records cannot be part of a personnel or similar file because ICE *released* certain information in this case—*i.e.*, because the documents responsive to the request contain "information relating to allegations of work-related misconduct by an ICE employee." Pl. Opp. at 12. But this seeks to turn the law of FOIA on its head. ICE properly released the nonexempt information that was "reasonably segregable" from the exempt portions of the records, as FOIA requires, 5 U.S.C. § 552(b), while redacting the exempt "*information* which applies to a particular individual" that is exempt under FOIA exemption 6, *Washington Post*, 456 U.S. at 602 (emphasis added). *See* Fuentes Decl. ¶¶ 50-51.

Perez again asserts "bad faith," but this, too, is contradicted by the case law and the record. Initially, Perez conflates his workplace-related grievances with ICE's response to his FOIA request. *See* Pl. Opp. at 13-14. But his complaints over the handling of his personnel issues have no bearing on whether the agency's response to his FOIA request was proper. And the fact that ICE produced records to Perez in litigation and reevaluated certain exemptions—his only pertinent argument here, *see id.* at 14—is simply not a basis to assert bad faith on the part of

---

[3] Perez also makes no attempt to distinguish *Ferrigno v. DHS*, in which Judge Sullivan held that "records of ICE's internal investigation containing the names and statements of witnesses . . . and [the plaintiff's] [s]upervisor are clearly similar files for the purpose of Exemption 6." No. 09 Civ. 5878 (RJS), 2011 WL 1345168, at *8 (S.D.N.Y. Mar. 29, 2011); *see also Perlman v. DOJ*, 312 F.3d 100, 106 (2d Cir. 2002) (concluding that report of internal investigation "replete with identifying information regarding [government official] and alleged misconduct" was a "similar file"), *vacated by* 541 U.S. 970 (2004), *reinstated after remand*, 380 F.3d 110 (2d Cir. 2004).

[4] Perez cites one case from this district on this point, but it pre-dates *Wood* and—importantly— holds that the information in question did not "implicate privacy interests under Exemption[] 6"—not that Exemption 6's threshold "personnel" or "similar files" requirement did not apply. *See Phillips v. ICE*, 385 F. Supp. 2d 296, 307 (S.D.N.Y. 2005) (cited in Pl. Opp. at 12).

an agency. Courts "decline to penalize a government agency for voluntarily reevaluating and revising its FOIA withholdings." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 627 (D.C. Cir. 2011); *accord Meeropol*, 790 F.2d at 953 (where an agency "admit[s] and correct[s] error when error is revealed," this presents a "a stronger, rather than a weaker, basis" for accepting its averments); *Am. Oversight v. DOJ*, 401 F. Supp. 3d 16, 26 (D.D.C. 2019) ("[T]he fact that an agency discovers an error in its earlier representations, and thereafter changes course, does not alone displace the good-faith presumption courts accord its declarations.").

> **B. The Withheld Records and Information Were Compiled for Law Enforcement Purposes Under Exemption 7(C)**

ICE withheld the same information under exemption 7(C) as it did under exemption 6, providing an alternate basis for all of the privacy withholdings. Exemption 7(C) protects "records or information compiled for law enforcement purposes" whose release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As stated in ICE's declaration, ICE OPR's mission includes investigating misconduct allegations involving ICE employees, and "investigated [Perez's personnel] complaint to determine whether there had been any violation of law, regulation, or policy." Fuentes Decl. ¶¶ 41-42.[5] Additional information about ICE OPR's duties and authority is set forth in ICE's supplemental declaration. 2d Fuentes Decl. ¶¶ 26-29.

An internal investigation that "focus[es] on specific and potentially unlawful activity by particular employees" goes "beyond general monitoring of agency activities" and thus may qualify for withholding under exemption 7(C). *Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984).

---

[5] *See also* 6 U.S.C. § 253(1) (granting DHS secretary authority to conduct "investigations of noncriminal allegations of misconduct, corruption, and fraud involving any employee of U.S. Immigration and Customs Enforcement that are not subject to investigation by the Inspector General for the Department").

"There is . . . no requirement under exemption 7 that any violation of federal law be implicated, so long as the information is compiled for a federally authorized law enforcement purpose." *Keys v. DOJ*, 830 F.2d 337, 342 (D.C. Cir. 1987) (alterations and quotation marks omitted).

Perez incorrectly contends that the records here do not fall under exemption 7(C) because, he asserts, they were not compiled for law enforcement purposes. But as the Second Circuit has recognized, government records "compiled in connection with an [internal agency] investigation . . . into possible violations of law and, in particular, whether a certain employee . . . committed acts that could subject that employee to criminal or civil penalties" are "compiled for a law enforcement purpose" and thus are subject to exemption 7(C). *Perlman*, 312 F.3d at 105 (quotation marks omitted). Moreover, Perez's own personnel complaint belies his claim that no potential violation of law was alleged. His submissions to ICE OPR stated repeatedly that he believed the purported misconduct violated "the law," not just agency procedures. *See* 2d Fuentes Decl. ¶ 27 (quoting Perez statement asserting that "it is [Perez's] view that [the supervisor] has repeatedly violated the NYC OCC's standard operating procedure (SOP), the code of conduct, *and the law*" through the alleged misconduct (emphasis added)).

Perez focuses largely on whether the alleged acts that ICE investigated could have resulted in criminal penalties. Pl. Opp. at 15-16. But "the term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. OPM*, 76 F.3d 1240, 1243 (D.C. Cir. 1996); *accord Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 91 (D.D.C. 2015) ("files relating to civil or administrative enforcement proceedings can also fall under Exemption 7(C)").

Accordingly, because ICE OPR is charged with investigating misconduct complaints and in fact reviewed Perez's complaint for potential violations of "law, regulation, or policy,"

Fuentes Decl. ¶¶ 41-42, and because Perez himself expressly alleged purported violations of law, the records from the resulting investigation were compiled for law enforcement purposes.

### C. The Privacy Balancing Supports ICE's Withholdings Under Both Exemptions 6 and 7(C)

#### 1. Subjects, Witnesses, and Investigators in Internal Investigations Have Substantial Privacy Interests

The records here give rise to a substantial privacy interest on behalf of the agency personnel and third parties whose information was redacted under FOIA privacy exemptions 6 and 7(C). Perez does not appear to argue that the privacy interests here are *de minimis*, and spends most of his briefing arguing that the balancing favors disclosure. *See* Dkt. No. 31 ("Pl. Br.") at 14-18, 21-22. Therefore, the Court should deem this point conceded.

Nor can Perez reasonably contest this point. ICE determined that the relevant agency personnel and third parties whose names appear in the documents in the record—including e-mails, witness statements, exhibits, and other documents—have a substantial privacy interest in nondisclosure, because they were witnesses to the personnel investigation, were involved in the investigation, or were the subject of Perez's allegations. Fuentes Decl. ¶¶ 43-46. As a result, they could be subject to harassment, embarrassment, or retaliation. *Id.* In the context of an internal agency investigation, it is well settled that witnesses and third parties have "strong privacy interests" in avoiding the disclosure of their identities, *Perlman*, 312 F.3d at 106-07; *accord Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 47 (D.D.C. 2019); *Kearns v. FAA*, 312 F. Supp. 3d 97, 111 (D.D.C. 2018); *Conti*, 2014 WL 1274517, at *18; *Cotton v. Adams*, 798 F. Supp. 22, 26 (D.D.C. 1992), as do government investigators, *Ferrigno*, 2011 WL 1345168, at *8 ("Government investigators and witnesses in internal investigations . . . possess strong privacy interests, as the disclosure of their identities may result in harassment or embarrassment."); *Germosen v. Cox*, No. 98 Civ. 1294 (BSJ), 1999 WL 1021559, at *15 (S.D.N.Y. Nov. 9, 1999)

("the privacy interests of witnesses and investigative agents identified in agency documents are given heavy weight").  Perez's bald and haphazard statements to the contrary—which hinge on his suppositions about whether witnesses were acting in their "official capacities," Pl. Opp. at 21—misunderstand FOIA and disregard binding law.  *See Perlman*, 312 F.3d at 105-06.

Perez also fails to rebut or distinguish the number of cases that have upheld the withholding of witness statements, cited in the government's opening brief.  Gov't Br. at 9-11.  As these cases hold, parties have a privacy interest in the substance of witness statements when the statements themselves may be identifying.  *See Horvath*, 419 F. Supp. 3d at 47-49; *Conti*, 2014 WL 1274517, at *18-20; *Ferrigno*, 2011 WL 1345168, at *8; *see also Cotton*, 798 F. Supp. at 26-27.  The Court should deem this point conceded as well.

## 2. There Is No Material Public Interest in Release of Material Withheld Under Exemptions 6 and 7(C), and Balancing Supports Withholding

Perez fails to identify any cognizable public interest in disclosure, and thus cannot meet his "burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA."  *Assoc. Press v. DOJ*, 549 F.3d 62, 66 (2d Cir. 2008).  Perez hardly attempts to argue that there is a public interest in the personal information of all the third parties and witnesses.  And as the Second Circuit has recognized the public has only "minimal" interest "in learning the identity of witnesses and other third parties," because such information "tells [the public] little or nothing about either the administration of [a government] program or the [conduct of the internal agency] investigation."  *Perlman*, 312 F. 3d at 106.  Here, any such minimal public interest cannot overcome the "strong privacy interests" of witnesses, third parties, and agency personnel involved in the investigation.  *Id.*

Perez claims that his interest is in "shed[ding] light on ICE's nonperformance of its duties, failing to meaningfully investigate corruption and mismanagement within."  Perez Opp.

at 18. But for this proposition he cites his own declaration, which contains only his unsubstantiated and self-serving speculation concerning the internal inquiry. *See* Perez Decl. ¶¶ 2, 10, 32. Meanwhile, ICE OPR's internal investigation concluded that Perez's allegations of misconduct "were not substantiated." Fuentes Decl. ¶ 48. In an analogous situation, another court found no public interest in release of information where internal investigation concluded the plaintiff's claim was "unfounded" and the plaintiff "produced absolutely no evidence that government impropriety might have occurred, beyond his own assertions." *Ferrigno*, 2011 WL 1345168, at *8. Perez fails to advance any material evidence of government wrongdoing; his "disappointment with the outcome of the [internal agency investigation] is not evidence that the investigators were negligent or biased in the performance of their duties." *Wood*, 432 F.3d at 89. In short, Perez presents nothing that could overcome the "presumption of legitimacy [that] attends government actions," including internal investigations, which "may not be overcome on the basis of unsupported allegations." *Id.*; *see NARA v. Favish*, 541 U.S. 157, 175 (2004) ("[a]llegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing" to overcome the presumption of legitimacy).

Indeed, Perez fails to explain how the lion's share of the withheld information—the names and contact information of individuals—could possibly shed light on government activity. Indeed, it is axiomatic that the release of names and similar information generally serves no public interest because it does not reveal what the government is up to. *See, e.g.*, *Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991) (the "disclosure of the names and addresses sought by [the requester] would shed no light on [the agency's] performance" of its duties); *accord Wood*, 432 F.3d at 89 ("the names of the government investigators would not reveal anything about . . . supposed bias" in the conduct of the investigation); *Garcia v. DOJ*, 181 F. Supp. 2d 356, 372

(S.D.N.Y. 2002) ("Where the requestor seeks information concerning the identity of individuals, the requestor generally does not intend to discover anything about the conduct of the agency that has possession of the requested records." (quotation marks and brackets omitted)).[6]

The sole point that Perez materially contests is whether, under the *Perlman* test, the identity of the subject of his misconduct allegation, the DCC, should be released.[7]  *See* Pl. Opp. at 17-21; Pl. Br. at 13-18, 22.  But there is no material public interest favoring the disclosure of the identity of the subject of ICE's internal investigation.  As noted in the government's opening brief, *Perlman* set forth a five-factor test for "balancing a government employee's privacy interests against the public's interest in disclosure," looking to "(1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature."  *Perlman*, 312 F.3d at 107.

The weighing of these factors favors nondisclosure.  First, the DCC is not a high-level ICE official, but instead a supervisory attorney at a regional ICE office.  This stands in contrast to the official in *Perlman*, who was the general counsel of INS, which controlled a federal program he was accused of mis-administering.  312 F.3d at 107.  Second, ICE's investigation here concluded that Perez's allegations of wrongdoing were unsubstantiated.  Fuentes Decl. ¶¶ 6, 48.  Again, this stands in contrast to previous cases where disclosure has been ordered, where

---

[6] The possibility that Perez may wish to use withheld information for his own ends, or in other litigation, "does not give rise to a public interest."  *Massey v. FBI*, 3 F.3d 620, 625 (2d Cir. 1993), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011).

[7] Perez appears to misapprehend *Perlman*, whose five-factor test applies only to a government employee who is the subject of an internal misconduct allegation.  *See* 312 F.3d at 107.  The *Perlman* factors do not apply to other parties whose personal information is redacted.

officials have been found to have conducted their duties improperly.  *Perlman*, 312 F.3d at 107-08 (substantial evidence showed that INS general counsel "allowed former INS officials" to "exercise improper influence over [an INS] program's administration" in which they had financial interests); *Stern*, 737 F.2d at 93-94 (ordering disclosure of name of "a high-level [FBI] employee who was found to have participated deliberately and knowingly in" a cover-up of illegal activity).  Third, the only information in which there could be a public interest has already been disclosed: ICE's release of redacted records regarding its internal investigation concerning Perez's personnel complaint suffices to satisfy any public interest.  Where the government has identified "other sources from which plaintiffs could obtain much of the information they seek," this "further reduces the public interest" under the balancing test.  *Long v. OPM*, 692 F.3d 185, 197 (2d Cir. 2012); *see Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (public interest in disclosure was satisfied by release of redacted documents, and thus "disclosure of the unredacted documents would . . . constitute a clearly unwarranted invasion of the interviewees' privacy").  Fourth, the withheld information would shed no additional light on government activity.  The withheld information was largely the names and contact information of witnesses, third parties, and involved agency personnel, which gives rise to minimal public interest "because that information tells little or nothing about . . . the conduct of [the internal] investigation."  *Perlman*, 312 F.3d at 106; *accord Ferrigno*, 2011 WL 1345168, at *9.  Fifth, while the allegations at issue relate to the DCC's job functions, this is of little moment, because those allegations were found to be unsubstantiated.  *See* Fuentes Decl. ¶¶ 6, 31, 46-49.

In sum, *Perlman* also weighs against the disclosure of additional information withheld under FOIA's privacy exemptions.  *See Ferrigno*, 2011 WL 1345168, at *9 (applying *Perlman* and denying disclosure where "the Supervisor's somewhat low rank, the relatively minor charge

against him, and the weakness of the evidence all weigh against disclosure"). For all these reasons, the application of the privacy balancing under both exemptions 6 and 7(C) favors nondisclosure, and the Court should grant judgment to ICE. *See Wood*, 432 F.3d at 88-89.

### D. Perez Concedes That ICE Complied with FOIA's Segregability Requirement

As stated in ICE's opening brief, ICE complied with FOIA's segregability requirement by conducting a close review, which concluded that no additional nonexempt information could be released without compromising exempt information. *See* Gov't Br. at 17-18; Fuentes Decl. ¶¶ 50-53; *see also* 5 U.S.C. § 552(b). ICE's second declaration supplements the segregability analysis to address new issues Perez raises. 2d Fuentes Decl. ¶ 20. Perez should be deemed to have conceded this issue, as he fails to rebut the presumption in favor of the agency that it complied with its segregability obligation. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *see Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (in a counseled case, a party abandons a claim or defense that it fails to defend on summary judgment).

## IV. PEREZ'S EXEMPTION 5 CHALLENGE FAILS

As explained above in Part II, Perez waived any challenge to withholdings under exemption 5, as they fall outside the scope of the parties' agreed limitations on the litigation. Even if the Court considers ICE's exemption 5 withholdings on the merits, Perez's arguments fail. The communications that ICE redacted pursuant to this exemption constitute predecisional, deliberative materials, in which ICE staff investigating Perez's personnel complaint made recommendations or reported their preliminary views or opinions, in addition to a limited amount of attorney work product. Because these documents are properly protected by the deliberative process and work product privileges, ICE's withholdings under this exemption should be upheld.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 552(b)(5). "Courts universally read this provision to mean that agency documents that would be privileged in ordinary civil discovery are also protected from disclosure under FOIA." *N.Y. Times Co. v. DOJ*, 939 F.3d 479, 488 (2d Cir. 2019) (collecting cases).

Exemption 5 encompasses the "'deliberative process' or 'executive' privilege, which protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins*, 929 F.2d at 84. The deliberative process privilege "protect[s] open and frank discussion" among government decisionmakers and safeguards their decisionmaking process, *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001), by shielding them "from being forced to operate in a fishbowl," *ACLU v. NSA*, 925 F.3d 576, 592 (2d Cir. 2019) (quotation marks omitted).

Information in an agency record must satisfy two criteria to qualify for the deliberative process privilege: it "must be both 'predecisional' and 'deliberative.'" *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). A document is "predecisional" if it "precedes, in temporal sequence, the 'decision' to which it relates." *Id.* A document is deliberative if it "reflects the give-and-take of the consultative process" by which agency decisions are formulated. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

First, the recommendations and opinions recorded in the e-mails and other records here are predecisional. Those records "precede[], in temporal sequence," ICE's final decision in response to Perez's March 2018 complaint against his former supervisor. *Grand Cent. P'ship*, 166 F.3d at 482. As set out in ICE's supplemental declaration, most of these materials date between May and November 2018; they precede and lead up to the ultimate recommendation memorandum dated in November 2018 by the second fact-finder—which itself was considered in, and preceded, ICE's decision in this matter later in November 2018. 2d Fuentes Decl. ¶¶ 10-

11.[8]  All of the relevant documents are accordingly predecisional.  *Id.* ¶¶ 10-13.

The views and recommendations recorded in the e-mails, moreover, are deliberative. They "contain the opinions, recommendations, and preliminary views of ICE staff, which formed part of the consultative process that led to ICE's ultimate decision in this matter."  *Id.* ¶ 14. These messages thus reflect the "recommendations," "suggestions," and other "personal opinions" of ICE employees, instead of ICE's policy or decision.  *Grand Cent. P'ship*, 166 F.3d at 482.  Indeed, it is well established that an agency investigation seeking to determine whether to discipline a government employee, such as the internal investigation here, is a "consultative process" for purposes of Exemption 5.  *See, e.g.*, *Providence Journal Co. v. Dep't of Army*, 981 F.2d 552, 559-60 (1st Cir. 1992) (applying deliberative process privilege to Army inquiries that determined whether "Army personnel [would] be disciplined for alleged misconduct").  In providing their views on issues relevant to the investigation of Plaintiff's personnel grievance, ICE personnel contributed "an important, if not essential, link" in ICE's assessment of his allegations and determinations for how to proceed.  *Grand Cent. P'ship*, 166 F.3d at 483.

Perez asserts that communications discussing "arranging travel to New York do not form an essential link in a specified consultative process."  Pl. Br. at 24.  But Perez quotes only the unredacted portion of the document, which mentions arranging travel.  However, "in the redacted portion of the document . . . , agency personnel consulted regarding the next steps to take in the internal investigation, including but not limited to a reference to a possibility of travel as part of the investigation."  2d Fuentes Decl. ¶ 17.  The redacted portion contains agency staff's

---

[8] The record also contains a handful of documents concerning a separate, later (but "materially identical") personnel grievance that Perez filed in 2019.  2d Fuentes Decl. ¶ 12.  These records, identified in ICE's supplemental declaration, are "also pre-decisional because they precede ICE's final decision concerning Perez's second complaint in May 2019."  *Id.*

predecisional opinions and consultations, not final decisions, *id.*, and was appropriately withheld.

Next, Perez erroneously asserts that all of the documents withheld under exemption 5 "reflect[] the final decision of the agency and not the personal opinion of the writer." Pl. Br. at 24. He provides no factual basis for this legal conclusion, however. The fact that the agency, in making its final decisions, *considered* the recommendations made by agency personnel is of no moment; indeed, this is exactly the point of the doctrine—to "protect communications received by the decisionmaker on the subject of the decision prior to the time the decision is made to ensure that the subsequent decision will be fully informed." *ACLU v. NSA*, 925 F.3d at 593 (quotation marks omitted). Thus, documents that "preceded and directly related to" the agency's decision, *id.* at 592—like the records here—are protected as deliberative.

Perez asserts that the privilege does not apply because these documents were "adopted," Pl. Br. at 25, but he fundamentally misunderstands the doctrine and fails to provide any evidence supporting its applicability. "Express adoption of a pre-decisional document into working law means that a document first drafted as legal or policy advice has become an agency's effective law and policy." *N.Y. Times*, 939 F.3d at 490 n.7 (citing *ACLU v. NSA*, 925 F.3d at 595; quotation marks omitted). Perez manifestly fails to show that the consultations in any of these predecisional e-mails has become the agency's "working law" or otherwise "binds the agency and the public." *Id.* at 491. Nor has Perez shown "incorporation by reference," which applies where "an agency's formal opinion or determination of law or policy *expressly references and relies on* that document and its reasoning as the basis for a decision." *ACLU v. NSA*, 925 F.3d at 598 (emphasis added). Perez points to no evidence demonstrating an express reference to and reliance on any of the redacted predecisional content as part of an agency final decision.

Exemption 5 also incorporates the attorney work-product privilege, whose purpose "is to

preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *N.Y. Times*, 939 F.3d at 489 (quotation marks omitted). Here, two pages of records were redacted in part because they contained "communications between an attorney and his supervisor discussing litigation strategy and recommendations" regarding a "specific immigration case." 2d Fuentes Decl. ¶ 19. This information was properly withheld as well.

In sum, ICE correctly determined that the deliberative process and work-product privileges, incorporated by exemption 5, protect from disclosure the recommendations and opinions, and the attorney work product, of ICE staff contained in the relevant records. Indeed, release would cause the harm these privileges are intended to prevent—the "stifl[ing of] honest and frank communication within the agency" and "confusing the issues and misleading the public by . . . suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action," *Coastal States*, 617 F.2d at 866; and by "render[ing] it impossible for agency [attorneys] to effectively perform their jobs" if work product were released under FOIA, *N.Y. Times*, 939 F.3d at 489; *see also* 2d Fuentes Decl. ¶¶ 15-20.

## V.    ICE'S SEARCHES WERE REASONABLE AND ADEQUATE

As stated above in Part II, Perez waived any challenge to the adequacy of ICE's search here through the parties' narrowing agreement, which specifically stated that the "adequacy of ICE's search for records" was "not in dispute." Dkt. Nos. 24-25. But even if the Court reaches the merits, it should grant summary judgment to ICE.

An agency's search for records is considered "adequate" if it was "reasonably calculated to discover" documents responsive to the FOIA request. *Grand Cent. P'ship*, 166 F.3d at 489. "The adequacy of a search is not measured by its results, but rather by its method." *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 124 (2d Cir. 2014). "If an agency demonstrates that it has conducted

a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia*, 181 F. Supp. 2d at 366.

ICE's searches were reasonable and adequate, and should be upheld. As stated in the Fuentes Declaration, ICE searched the locations likely to contain records responsive to Perez's FOIA request. Fuentes Decl. ¶¶ 12-27. In particular, ICE tasked searches to OPR, the Ethics Office within ICE OPLA, and OPLA's New York Office of Chief Counsel. *Id.* ¶ 18. These ICE offices conducted searches for responsive records based on their respective responsibilities and knowledge of the subject matter. OPR searched its case management system for Perez's first and last name and searched computer files for a related case number. *Id.* ¶ 20. OPLA's Ethics Office searched its files for Perez's first and last name, his former supervisor's first and last name, and case numbers assigned by the Ethics Office associated with Mr. Perez. *Id.* ¶ 24. Last, the New York Chief Counsel's Office conducted a search of e-mail and computer files, using terms including Perez's first and last name, "Management inquiry," and "OPR fact finder." *Id.* ¶ 27. Potentially responsive records were forwarded for review and processing. *Id.* ¶¶ 19-27.

Perez wrongly contends that ICE "has failed to provide documents it has identified in its production." Pl. Br. at 31-32. But his complaints appear primarily to stem from deficiencies in his own review of records produced to him, rather than in the production itself. As stated in detail in the supplemental ICE declaration, these records were largely either produced, withheld, or determined to be nonresponsive. *See* 2d Fuentes Decl. ¶ 30 (referencing by Bates number most of documents that Plaintiff asserted were not provided, and explaining that others were nonresponsive or were withheld).

"[A]n agency need not show that its search uncovered every extant responsive document, but only that it was reasonably calculated to discover the requested documents." *Adamowicz,*

402 F. App'x at 651 (quotation marks omitted); *accord Grand Cent. P'ship*, 166 F.3d at 489 ("an agency's search need not be perfect, but rather need only be reasonable"). ICE conducted a search of appropriate locations that was reasonably calculated to uncover the records responsive to Plaintiff's FOIA request. Thus, even had Perez preserved the adequacy of ICE's search for review, the Court should grant summary judgment to ICE. *See N.Y. Times*, 756 F.3d at 123-24.

## VI.   ICE'S RESPONSIVENESS DETERMINATIONS SHOULD BE UPHELD

While Perez claims ICE should have produced certain records deemed nonresponsive to his request, Pl. Opp. at 22-24, this argument fails. Perez principally argues that ICE's responses at the administrative phase, and subsequent production and re-determination of exemptions in litigation, demonstrates "bad faith." *Id.* at 22-23. But this is the same argument he makes elsewhere, which has been roundly rejected in the case law. *See Military Audit*, 656 F.2d at 754 ("emphatically reject[ing]" this argument); *ACLU*, 628 F.3d at 627; *Meeropol*, 790 F.2d at 953.

Beyond that, Perez's arguments rely mainly on his own groundless speculation, rather than evidence, that other records exist that are responsive to the request. *See, e.g.*, Pl. Opp. at 23 (unsupported assertion that "ICE's claim that the documents pertained to 'unrelated immigration cases' is likely false"). Such speculation has no value; a requester's "purely speculative claims about the existence and discoverability" of other responsive documents does not undermine the presumption of good faith given to an agency's declarations. *Grand Cent. P'ship*, 166 F.3d at 489 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Similarly, Perez's claim that certain documents must be responsive because they "forwarded to ICE's FOIA office by 'individuals and component offices' that believed the documents related to Plaintiff's request," Pl. Opp. at 23, is unsupported by evidence. Rather, ICE's declaration indicates that several offices searched for related matters using broad search terms—including Perez's first and last name and the former supervisor's first and last name—

which could easily have returned nonresponsive information.  *See* Fuentes Decl. ¶¶ 4-5, 19-27, 32-33; Gov't Br. 19-20.

Perez also erroneously contends that certain records should have been produced, including a "letter titled Memorandum MI 201802464" and associated files, which were referenced in an e-mail dated February 15, 2018.  Pl. Opp. at 23-24. But basic logic dictates that these records are nonresponsive.  They address a complaint of potential misconduct that had been filed as of February 15, 2018.  *See* 2d Fuentes Decl. ¶ 30. Perez made his initial complaint of misconduct—the subject of his FOIA request—on March 12, 2018, almost a month *after* that date.  *See id.*; Perez Decl. ¶ 3.  These records thus predate, and are not a part of, Plaintiff's own misconduct allegations against the DCC.[9]

In sum, Perez has failed to come up with any nonspeculative basis to controvert ICE FOIA's statement that the "records deemed non-responsive did not contain information pertaining" to Perez's internal workplace complaint, and moreover, such records "were not part of ICE's OPR investigative file regarding Plaintiff's complaint . . . , and they were not relied upon by the OPR investigator considering that complaint."  Fuentes Decl. ¶ 33.[10]  Because Perez cites no evidence that could point to additional responsive records, summary judgment should be granted to ICE.  *Grand Cent. P'ship*, 166 F.3d at 489; *Adamowicz*, 402 F. App'x at 650-51.

## CONCLUSION

The Court should grant ICE's motion for summary judgment and to strike Perez's noncompliant filings, and deny Perez's cross-motion.

---

[9] Additionally, ICE's investigation into Plaintiff's complaint continued until November 2018, while the matter numbered 201802464 was closed in March 2018.  2d Fuentes Decl. ¶ 30.

[10] As stated in ICE's supplemental declaration, certain exhibits to one of the witness statements, referenced elsewhere in the production, were mistakenly not produced earlier.  ICE FOIA has now released those records to Perez, with any appropriate withholdings and redactions.  2d Fuentes Decl. ¶ 31.

Dated: April 3, 2020
     New York, New York

                             Respectfully submitted,

                             GEOFFREY S. BERMAN
                             United States Attorney for the
                             Southern District of New York

By:    /s/ Samuel Dolinger
                             SAMUEL DOLINGER
                             Assistant United States Attorney
                             86 Chambers Street, 3rd Floor
                             New York, New York 10007
                             Tel.: (212) 637-2677
                             E-mail: samuel.dolinger@usdoj.gov