**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| —————————————————— ) | |
| KAMEPHIS PEREZ, ) | Civil Action |
| ) | |
| Plaintiff, ) | |
| ) | Docket No. 19 Civ. 3154 (PGG)(JLC) |
| v. ) | |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT, ) | |
| ) | |
| Defendant. ) | |
| —————————————————— ) | |


**PLAINTIFF'S MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AND**
**CROSS-MOTION TO STRIKE AND**
**IN OPPOSITION TO DEFENDANT'S MOTIONS TO STRIKE AND FOR SUMMARY**
**JUDGMENT**

Kamephis Perez
Plaintiff
510 East 6th Street, Apt D2
New York, NY 10009
(786) 837-6055
kamephis.perez@gmail.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

ARGUMENT .......................................................................................................................... 1

I.    ICE'S MOTION TO STRIKE LACKS MERIT ................................................................ 1

II.   PLAINTIFF'S   ALLEGED   WAIVER   WAS   NOT   KNOWING   AND
      VOLUNTARY ........................................................................................................... 4

III.  ICE'S BAD FAITH COMPELS A GRANT OF SUMMARY JUDGMENT FOR
      THE PLAINTIFF ...................................................................................................... 5

      A.  ICE's Delay in Disclosure is Unjustified and Supported by Perjured Testimony ............ 7

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Am. Ctr. for Law & Justice v. DOJ,*
   325 F. Supp. 3d 162 (DDC 2018) ...................................................... 6, 9

*Anghel v. New York State Dep't of Health,*
   947 F. Supp. 2d 284 (E.D.N.Y. 2013) ................................................... 5

*In re Ocean Rig UDW Inc.,*
   585 B.R. 31 (S.D.N.Y. 2018) ............................................................... 5

*Keys v. DOJ,*
   830 F.2d 337 (D.C. Cir. 1987) ........................................................ 10, 12

*Meeropol v. Meese,*
   790 F.2d 942 (D.C. Cir. 1986) ............................................................. 9

*Pub. Citizen v. Dep't of State,*
   276 F.3d 634 (D.C. Cir. 2002) ............................................................. 9

*Tracy v. Freshwater,*
   623 F.3d 90 (2d Cir. 2010) ............................................................... 4, 5

**STATUTES**

6 U.S.C. § 203 ..................................................................................... 10
6 U.S.C. § 251 ..................................................................................... 10
6 U.S.C. § 253 ..................................................................................... 11
8 U.S.C. § 1357 ................................................................................... 11
Public Law 107-296, §§ 403, 441, 443 ................................................. 10

**REGULATIONS**

8 C.F.R. § 287.5 ................................................................................... 11
8 C.F.R. § 287.5(3) .............................................................................. 12

The Plaintiff, Kamephis Perez, respectfully submits this memorandum of law in support of his cross-motion to strike, in further support of his motion for summary judgment and in opposition to defendant's motions to strike and for summary judgment.

## ARGUMENT

### I.     ICE'S MOTION TO STRIKE LACKS MERIT.

ICE's motion to strike should be denied as frivolous because the Plaintiff has not violated the Court's Rules. ICE argues that Plaintiff's memoranda should be stricken from the record because they violated Your Honor's 25-page limit. Def. Reply Br. at 4 (*citing* Individual Rules of Practice of Judge Paul G. Gardephe in Civil Cases, Rule IV.B). This argument ignores the fact that the Individual Rules of Practice of Judge Paul G. Gardephe in Civil Cases explicitly state that "…these Individual Practices apply to all civil matters assigned to the Honorable Paul G. Gardephe, except for *prose* [sic] cases." Individual Rules of Practice of Judge Paul G. Gardephe in Civil Cases. The Plaintiff in this matter is concededly represented *pro se.*

ICE's argument regarding solicitudes is inapposite. *See* Def. Reply Br. at 3. The solicitude generally afforded to *pro se* litigants involve a relaxing of otherwise applicable rules. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). In *Tracy v. Freshwater,* on which ICE relies, the Court ultimately held that "while a pro se litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant." Accepting Plaintiff's brief in this instance would not require a relaxation of an applicable rules because Rule IV.B explicitly does not apply to any *pro se* litigant. This exemption in the Individual Rules cannot reasonably be read as a "solicitude," which varies depending on the pro se litigant's "specific procedural context and relevant characteristics." *See id.* ICE's motion is frivolous and yet another example of Defendant's bad faith in this matter.

To be clear, the Plaintiff did not intentionally violate any court rule. Each of the Plaintiff's briefs falls within the 25-page limit. *See* Pl. Memorandum in Support of Cross-Motion for Summary Judgment (Dkt. No. 31); Pl. Memorandum in Opposition to Def. Motion for Summary Judgment (Dkt. No. 32). Plaintiff submitted individual memoranda because ICE's call for a "combined opposition to the government's motion *and any* cross-motion for summary judgment" was unclear. Perez 2d Decl. ¶ 25. Although ICE alleges these briefs total "57 pages", each is in fact only 24 pages long, totaling 48 pages. *See id.*; Def. Reply Br. at 4. ICE has arrived at its total by including the non-substantive pages, the cover, table of contents, and table of authorities, which, while not explicitly excluded in the Individual Rules, is generally understood to be excluded from the page count. *See In re Ocean Rig UDW Inc.*, 585 B.R. 31, 41 (S.D.N.Y. 2018), *aff'd*, 764 F. App'x 46 (2d Cir. 2019); *Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013), *aff'd,* 589 F. App'x 28 (2d Cir. 2015). If these non-substantive pages are indeed included, then ICE's own memorandum of law—26 pages in length—is in violation of Rule IV.B. *See* Def. Br. (Dkt. No. 27).

It is particularly shocking that ICE would make this frivolous argument without addressing its own conduct. While under ICE's calculation its initial brief may have only exceeded the limit by one page, the Reply Brief containing this argument is itself 32 pages long. *Id.* Even excluding the non-substantive pages, ICE's 25-page Reply Brief exceeds the 10-page limit for reply memoranda by a larger proportion than has the Plaintiff. *See id.*; Individual Rules of Practice of Judge Paul G. Gardephe in Civil Cases, Rule IV.B. Absent any genuine support for its withholdings, ICE instead seeks to improperly exclude Plaintiff's arguments from the record.

Should the Court find the Individual Rules applicable in this case, Plaintiff respectfully requests the Court rely on Plaintiff's opposition to ICE's motion for summary judgment and ignore

the excess pages in Plaintiff's memorandum in support of his cross-motion for summary judgment. In such case, however, ICE's excess pages should similarly be stricken and ignored and summary judgment should be granted in Plaintiff's favor as to each of the now unopposed portions of Plaintiff's motion.

## II.    PLAINTIFF'S ALLEGED WAIVER WAS NOT KNOWING AND VOLUNTARY.

ICE's arguments regarding Plaintiff's alleged waiver of his challenge to the adequacy of ICE's withholdings is without merit because the waiver was not knowing and voluntary. ICE concedes that any waiver of issues raised in litigation must be knowing and voluntary. Def. Reply Br. at 5-6 (*citing Am. Ctr. for Law & Justice v. DOJ,* 325 F. Supp. 3d 162, 169 (DDC 2018)). The waiver ICE seeks to enforce limits this litigation to whether ICE properly withheld documents under Exemptions 5 and 7(E) and to the responsiveness issue. *See* Exh. A at 0004, 0169; Dkt. No. 25. ICE rendered these issues moot by later identifying the documents as witness statements and reclassifying their withholding as justified under Exemptions 6 and 7(C). *See* Exh. E. The Plaintiff agreed to limit his litigation to the applicability of Exemption 5 and 7(E) because these appeared to the Plaintiff to be particularly weak and the claim that the document at Bates Number 0169 involved "sensitive law enforcement techniques" suggested this document would contain all of the information Plaintiff seeks. Perez 2d Decl. ¶ 26. Now that ICE has re-classified the documents at Bates Numbers 0004 and 0169 under Exemptions 6 and 7(C), the Plaintiff has no reason to limit his challenge to the classification of these documents, the same legal argument supporting the rejection of these withholdings apply to the remaining documents; nor does the Plaintiff have any reason to waive his Exemption 5 argument, which no longer applies to the two documents withheld in full, but does apply throughout the remaining responsive documents which are now no longer otherwise excluded. *See* Perez 2d Decl. ¶ 30. Simply put, there is no longer any efficiency to the narrowing of the litigation to which Plaintiff previously agreed; Plaintiff would not—and does not

3

now—waive the issues previously waived if the true facts were known to him. Perez 2d Decl. ¶ 33. Nor would Plaintiff have agreed to such a waiver had he known at the time that ICE was acting in bad faith, by withholding responsive documents in its possession with the intent to support such improper withholdings with perjured testimony.

## III.  ICE'S BAD FAITH COMPELS A GRANT OF SUMMARY JUDGMENT FOR THE PLAINTIFF.

Primarily important to the question of waiver and summary judgment is ICE's bad faith throughout these proceedings, commencing at the administrative stage and continuing throughout litigation to its latest filings. ICE's misconduct prior to February 21, 2020 is detailed in the Plaintiff's memoranda and will not be repeated here. *See* Pl. Memorandum in Opposition to Def. Motion for Summary Judgment at 10-13 (Dkt. No. 32); Pl. Memorandum in Support of Cross-Motion for Summary Judgment at 13-15 (Dkt. No. 31). As noted *supra* at I, ICE has frivolously moved to strike Plaintiff's memoranda by seeking to apply an inapplicable rule ICE itself is violating, based on an intentional miscalculation of the page-length of Plaintiff's memoranda that, if applied to ICE's submissions, also renders it in violation of the Rule.

Despite ICE's multiple, unjustified delays, the Agency now asserts without a hint of irony that Plaintiff's waiver is somehow cured of its involuntariness because Plaintiff did not raise the issue prior to the commencement of briefing. Def. Reply Br. at 7, 14. In order to place the blame on the Plaintiff, ICE misrepresents the timeline of Plaintiff's discovery of the issues with the waiver. *See* Perez 2d Decl. ¶¶ 26-43. But even this is a distraction, the real delay has been ICE's. The Plaintiff has known throughout these proceedings that its withholdings are improper. Fuentes now admits that the investigation into DCC Taylor's misconduct ended in "November 2018," confirming Plaintiff's allegation that ICE's February 1, 2019 and April 1, 2019 administrative appeal decisions falsely represented the existence of an investigation until "March 27, 2019."

4

Fuentes 2d Decl. ¶ 30; Exhs. B, C; *see* Pl. Memorandum in Support of Cross-Motion for Summary Judgment at 5 (Dkt. No. 31). ICE makes no attempt to justify these misrepresentations.

Nor does ICE offer any explanation why it waited until January 21, 2020 to notify Plaintiff of the upcoming re-classification. AUSA Samuel Dolinger knew on or about November 7, 2019 that ICE's withholdings under FOIA Exemptions 5, 6, 7(C), 7(E), and "Exemption (k)(2)" of the Privacy Act were improper. *See* Exh. C; Perez 2d Decl. ¶¶ 19-23. ICE's November 29, 2019 disclosure indicated that Dolinger, not ICE, should be contacted if there were any questions. Exh. D. Dolinger, who was privy to the unredacted documents and who oversaw their redactions, could have and should have known on November 7, 2019 that Bates Numbers 0004, and 0169 were not properly classified, and that at least one document was incomplete and missing at least 21 pages. *See* Exh. G. Moreover, just as it had previously provided 22 days' notice, ICE could certainly have alerted the Plaintiff as to the upcoming reclassification, allowing the parties to delay the briefing schedule and eliminating the delay ICE now blames on the Plaintiff.

Instead, ICE has continued its questionable conduct. ICE produced additional documents on April 3, 2020, the same date it submitted its reply memorandum. Exh. G. ICE's latest production consists of Exhibits A-E, which Plaintiff previously noted were intentionally withheld by ICE. Pl. Memorandum in Support of Cross-Motion for Summary Judgment at 13 (Dkt. No. 31). Fuentes alleges these documents were withheld "mistakenly," but does not offer any explanation. ICE does not explain how Exhibit F to DCC Taylor's made its way into the earlier production, why it was separated from the document to which it was originally attached, and from the other exhibits, or why the exhibit letter in the top right-hand corner was redacted. Exh. A at 0166. Any of these "mistakes" had they not occurred, would have revealed that the six exhibits were missing and that one of the documents withheld in full was not properly classified.

ICE argues that its piecemeal disclosure of documents after having been repeatedly caught in lies cannot as a matter of law be considered evidence of bad faith, lest it create a "perverse" incentive against disclosure. Def. Reply Br. at 13. The cases on which ICE relies are factually distinct, involving instances of agencies "voluntarily declassifying documents" or discovering responsive files "only because evidence of their existence was supplied by the [Plaintiff.]" *See id.*; *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002), *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986). None of ICE's disclosures or reclassifications in the instant case have been voluntary. ICE's decision to withhold every responsive document in its entirety was indefensible, as was its decision to withhold documents under "Exemption (k)(2) of the Privacy Act." Exh. C. ICE's decision to re-classify Bates Numbers 0004 and 0169 was similarly involuntary, coming after the Plaintiff indicated his intent to litigate those classifications. And ICE's April 2020 disclosure was similarly inevitable, coming only after Plaintiff pointed out the improper omission in his Motion for Summary Judgement. In each of these instances, ICE's decision not to disclose or properly identify the documents would have resulted in an adverse ruling against ICE. Finding these disclosures "voluntary" would create an incentive for an agency to delay its disclosures despite a legal obligation to release the documents, waiting until the request advances to federal litigation, then until the specific document is demanded and the requesting party identifies an indefensible argument for disclosure. This regime would be no different than proceeding to a final judgment in civil litigation. On the other hand, by holding ICE accountable for its bad faith in this regard, the Court incentivizes timely, complete, and accurate disclosure, as contemplated by the FOIA.

**A.  ICE's Delay in Disclosure is Unjustified and Supported by Perjured Testimony**.

ICE has notably made no attempt to offer any justification for its actions other than to state

they were "mistakes." Even when ICE does attempt to offer an explanation for its apparent

misconduct, it does so in bad faith. As stated previously, an agency cannot claim to compile

documents for law enforcement purposes unless it can "establish a rational nexus between the

agency's activity in compiling the documents and 'its law enforcement duties.'" Pl. Memorandum

in Opposition to Def. Motion for Summary Judgment (Dkt. No. 32). Plaintiff concedes that a

"federally authorized law enforcement purpose" is required. Def. Reply Br. at 12 (citing *Keys v.

DOJ*, 830 F.2d 337, 342 (D.C. Cir. 1987)). ICE's memorandum fails to identify any federally-

authorized law enforcement purpose. *See id*. And Fuentes's Declaration affirmatively

misrepresents the truth. Fuentes claims "OPR's investigative authority also derives from the

Homeland Security Act of 2002, Public Law 107-296, §§ 403, 441, 443 (Nov. 25, 2002)." Fuentes

2d Decl. ¶ 29. Section 403 of the Homeland Security Act ("HSA") creates no investigative

authority in OPR, it transfers to the Secretary of Homeland Security the "functions, personnel,

assets, and liabilities" of the United States Customs Service, Transportation Security

Administration, the Federal Protective Service, the Federal Law Enforcement Training Center, and

the Office of Domestic Preparedness. 6 U.S.C. § 203. Similarly, HSA § 441 transfers to the "Under

Secretary for Border and Transportation Security" the functions personnel, assets, and liabilities

of the Border Patrol program, the detention and removal program, the intelligence program, the

investigations program, and the inspections program. 6 U.S.C. § 251. Finally, HSA § 443, transfers

to the Under Secretary for Border and Transportation Security responsibility for "conducting

investigations of noncriminal allegations of misconduct, corruption, and fraud involving any

employee of the Bureau of Border Security that are not subject to investigation by the Inspector

General for the Department." 6 U.S.C. 253. Each of these statutes is irrelevant to the question

whether OPR has any federally-authorized law enforcement function, neither mentions OPR, and

whether the director of ICE has law enforcement powers is not in dispute or relevant where such power has not been delegated to OPR. Certainly if a statute regulation existed conferring such authority, Dolinger or Fuentes would have cited it directly, rather than all of Titles 8 and 19 of the United States Code, the entire Immigration and Nationality Act of 1952 and all of the Code of Federal Regulations.

Fuentes's claim that the HSA confers investigative authority to OPR is perjury, and his follow-up confirms that he knows the falsity of his statements. Fuentes follows this perjurious statement by again attempting to conflate OPR's authority with that of HSI's special agents, alluding to special agents' authority to "conduct criminal investigations, make arrests, conduct searches and seizures, administer oaths and carry weapons." *See* Fuentes 2d Decl. ¶ 29; *see also* Pl. Memorandum in Opposition to Summary Judgment at 15. While Fuentes may be ignorant to the fact that OPR does not conduct criminal investigations, conduct searches and seizures, or administer oaths, he undoubtedly knows OPR does not carry weapons or make arrests. *See* Perez 2d Decl. ¶ 11. HSI's authority to engage in these law enforcement activities, if any,[1] comes from 8 U.S.C. § 1357 and delegated by 8 C.F.R. § 287.5 to "border patrol agents," "air and marine agents," "special agents," "deportation officers," "CBP officers," "supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph," and certain "immigration officers." 8 C.F.R. § 287.5(3). Neither OPR nor ICE Ethics are included in this list. *Id.* OPR does not share its authority with HSI, and there is no reasonable basis to conflate the two, as Fuentes has repeatedly done here.

Fuentes's false testimony his declaration unreliable. In addition to lying about OPR's law

---

[1] Although not relevant to the instant matter there are serious reasons to believe the delegation of law enforcement authority to "[a]ny officer or employee of the Service authorized under regulations prescribed by the Attorney General" cannot confer authority to non-DOJ employees.

enforcement authority, Fuentes falsely alleges that Plaintiff filed a second workplace grievance in May 2019. Fuentes 2d Decl. ¶ 12. As the Plaintiff has previously noted, Fuentes's, and ICE's, bad faith handling of this FOIA request means "they cannot be taken at their word in the instant matter." Pl. Memorandum in Opposition to Def. Motion for Summary Judgment at 9 (Dkt. No. 32). As predicted, ICE's January 21, 2020 letter was not the final version of their decision, and there is no indication that ICE will not change its position upon receipt of this memorandum. Nor is there any indication that this latest claim is any more correct than the earlier claims. ICE's earlier claim regarding an investigation is now conclusively disproved by Fuentes's sworn statement admitting the investigation ended three months before ICE first cited as justification for its withholdings. ICE now insists that the missing documents identified by Plaintiff "were largely either produced, withheld, or determined to be nonresponsive," but there is no reason to believe Fuentes's identification of the documents, nor his claim that any document not produced is properly withheld or nonresponsive. *See* Def. Reply Br. at 23; Perez 2d. Decl. ¶ 35. As a result, ICE has failed to meet its burden on summary judgment or overcome Plaintiff's cross-motion for summary judgment.

## CONCLUSION

For the reasons stated herein, the Court should deny ICE's motion for summary judgment, strike ICE's reply memorandum, and grant the Plaintiff's motion for summary judgment.

Dated: April 14, 2020                    Respectfully submitted,
       New York, NY

                                         Kamephis Perez, *Pro se*
                                         510 East 6th Street
                                         Apt. D2
                                         New York, NY 10009
                                         786-837-6055
                                         Kamephis.Perez@gmail.com